Russell B. Stowers (Arizona State Bar No. 012903)
RUSSELL B. STOWERS, PLLC
La Paloma Corporate Center
3573 East Sunrise Drive, Suite 215
Tucson, AZ 85718
(520) 209-2777 (telephone)
(520) 882-3249 (facsimile)
Russ@StowersWest.com
Counsel for Defendant
Alliant Techsystems Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raytheon Company, | Case No. _____ |
| Plaintiff, | |
| vs. | **NOTICE OF REMOVAL** |
| Alliant Techsystems Inc., | |
| Defendant. | |

Defendant Alliant Techsystems Inc. ("ATK") provides notice of removal of this case from state to federal court pursuant to 28 U.S.C. §§ 1446, *et seq.* on the grounds set forth below.

## Summary of Litigation

1.      This is a dispute between a defense contractor (Plaintiff Raytheon) and its subcontractor (Defendant ATK) over rocket motors that ATK and its predecessors have been supplying to Raytheon since the 1990s for use in air-to-air missiles.  Each party has

1

simultaneously sued the other over alleged breaches in subcontracts between the parties in separate lawsuits filed in Arizona and Virginia.  *See* Ex. 1 (Raytheon suit papers) and Ex. 2 (ATK suit papers).

2.     The parties engaged in extensive discussions and a stand-still agreement regarding their dispute before litigation.  Raytheon Compl. ¶¶ 14 and 16-18; ATK Compl. ¶¶ 34-51.  On June 17, 2013, Raytheon terminated the stand-still agreement, effective 30 days from ATK's receipt of Raytheon's notice of termination.  Raytheon Compl. ¶ 19; ATK Compl. ¶ 48.

3.     In its Arizona lawsuit, Raytheon alleges that ATK failed to deliver missile components in compliance with the agreed-upon schedule and government-supplied specifications, allegedly causing delays and $100 million or more in damages.  *See* Ex. 1.

4.     In a lawsuit filed in the U.S. District Court for the Eastern District of Virginia (a court well-known for adjudicating disputes involving government contractors and related federal regulations), ATK alleges that Raytheon breached, impeded and terminated the subcontracts in violation of Federal Acquisition Regulation clauses incorporated into and governing the subcontracts, seeking declaratory relief and $30 million in damages.  *See* Ex. 2.

5.     Both lawsuits involve a common nucleus of facts and law, as both involve the same two parties and the same subcontracts which expressly incorporate numerous Federal Acquisition Regulation clauses and U.S. Military Specifications governing

defense contractors and government contracts.  Raytheon Compl. ¶¶ 11-18; ATK Compl. ¶¶ 11-18.

6.      In its Complaint in Arizona, Raytheon omitted mention of the subcontract provisions incorporating federal clauses, regulations and specifications in its lawsuit, styling its claims instead as a garden-variety state law contract dispute.  *See* Ex. 1. Raytheon did, however, expressly reference the subcontracts containing the federal law in its Complaint.  Raytheon Compl. ¶¶ 6-10.[1]

## The Procedural Requirements for Removal Have Been Satisfied

7.      Raytheon served ATK with the Arizona suit papers on July 30, 2013, the same day the Arizona lawsuit was filed.

8.      This Notice of Removal is filed within the 30-day deadline prescribed by 28 U.S.C. § 1446(b)(1).

9.      Copies of Raytheon's initial state court pleadings are attached as Exhibit 1, as required by 28 U.S.C. § 1446(a).

10.      ATK is also filing a Notice of Removed Action with the state court and serving  Raytheon with same on this date, as required by 28 U.S.C. § 1446(d).

*11*.      Accordingly, ATK has satisfied all of the procedural requirements for removal under 28 U.S.C. §§ 1446, *et seq.*

---

[1]   As addressed in paragraphs 25-27 below, documents cited in a Complaint can be considered for removal purposes.

**The District Court has Jurisdiction**

12.     Defendant has removed this case based on federal question jurisdiction and supplemental jurisdiction over any related state law claims or defenses.

13.     **Federal question jurisdiction** is founded on 28 U.S.C. § 1331, which provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." **Supplemental jurisdiction** is based on 28 U.S.C. § 1367, which provides in pertinent part, as follows: "... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction...."  28 U.S.C. § 1367(a).

14.     As addressed in both lawsuits, the parties entered into a series of subcontracts cited in their pleadings.  Raytheon Compl. ¶¶ 6-10; ATK Compl. ¶¶ 9-10. The subcontracts were for the supply of rocket motors for air-to-air missiles to be used by the U.S. military, and thus implicate significant national security interests.  The specifications for the rocket motors are U.S. Government-supplied Military Specifications.  Further, the contract clauses governing the dispute are Federal Acquisition Regulation clauses promulgated by the U.S. Government and incorporated into the subcontracts between the parties.   ATK Compl. ¶¶ 11-18.

### a.  The Subcontracts Implicate National Security Interests Properly Regulated by Uniform Federal Law.

15.    Raytheon has federal government contracts with the U.S. Air Force for the supply of Advanced Medium-Range Air-to-Air Missiles ("AMRAAMs").   Raytheon Compl. ¶ 1; ATK Compl. ¶ 5.

16.    The AMRAAM is a sophisticated missile that has been integrated into fighter aircraft including the F-15, F-16, F/A-18, F-22 and the Joint Strike Fighter.  The AMRAAM has been successfully used in combat in Iraq, Bosnia and Kosovo.  ATK Compl. ¶ 6; Raytheon Compl. ¶ 1.

17.    ATK is a subcontractor to Raytheon under Raytheon's federal government prime contracts for the supply of AMRAAM missiles.  Pursuant to ATK's subcontracts with Raytheon, ATK supplies rocket motors and warheads to be used as components of the AMRAAM.  Raytheon Compl. ¶¶ 2, 6-10; ATK Compl. ¶ 7.

18.    The subcontract line items for rocket motors are subject to the Defense Priorities and Allocations System ("DPAS").  The DPAS regulations, found at 15 C.F.R. §§ 700, *et seq.*, implement the Defense Production Act of 1950, as amended (50 U.S.C. App. 2061, *et seq.*), which in turn authorizes the President of the United States to, *inter alia*, "require priority performance of contracts and orders necessary or appropriate to promote the national defense over other contracts or orders [and] to allocate materials, services and facilities as necessary or appropriate to promote the national defense…."  15 C.F.R. § 700.1(a).

19.    Both Raytheon's federal prime contracts to provide the U.S. military with AMRAAMs and ATK's subcontracts to supply Raytheon with rocket motors to be used in the AMRAAMs involve issues regarding U.S. Military Specifications, require the expenditure of federally-appropriated funds, and thus implicate the national security interests of the United States.  Raytheon Compl. ¶¶ 1, 6-10, 13-14.

20.    In a controlling decision, the Ninth Circuit held "that 'the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law.'"  *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996), quoting *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640 (9th Cir. 1961).  "When federal law applies, as *American Pipe* holds that it does to this type of contract, it follows that the question arises under federal law, and federal question jurisdiction exists."  *Id*.

21.    The facts in *New SD, Inc.* are substantially identical to those in the present case.  Both cases involve: (a) a dispute between a prime contractor and subcontractor regarding subcontracts for the supply of components for missiles to be sold to the U.S. military; (b) a voluntary decision by the prime contractor and subcontractor to incorporate government procurement regulations into the subcontracts; and (c) subcontracts containing defense priority ratings as described in paragraph 18 above.  *Id.* at 954.

22.    Under the standards set in *New SD, Inc.* and *American Pipe*, the agreements at issue in Raytheon's Complaint implicate national security interests that should be regulated by a uniform federal law.  Accordingly, it follows that Raytheon's claims against

6

ATK "arise[] under federal law, and federal question jurisdiction exists."  *New SD*, *supra*, at 955.

**b.   The Dispute Arises under Federal Acquisition Regulation Clauses, and Plaintiff's Right to Relief Depends on Resolution of Substantial Questions of Federal Law.**

23.    Even where a complaint raises state law causes of action, federal question jurisdiction will lie if the state law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

24.    While Raytheon styled its Complaint as a private commercial dispute arising under state law, in its Motion to Designate as Complex Case ("Motion") filed simultaneously with the Complaint and attached as part of Exhibit 1, Raytheon acknowledged that federal government contracts law governs the dispute between the parties.   In the Motion, Raytheon conceded the legal issues in the case "involve government contracts law, a specialized area of law applicable to government contracts *and subcontracts*."  Mot. 3:7-8 (emphasis added).

25.    In assessing whether Raytheon's right to relief depends on resolution of substantial questions of federal law, it is appropriate for this Court to consider the documents referenced in Raytheon's Complaint.  The Complaint is rife with references to the subcontracts upon which Raytheon's claims are based. Raytheon Compl. ¶¶ 6-10.  Raytheon also relies on a variety of written notices, correspondence and a stand-still

7

agreement, all identified with equal specificity in the Complaint. *Id*. at ¶¶ 13-14 and 16-20. Raytheon expressly incorporates the same paragraphs of the Complaint citing the contract and other documents into its breach of contract and warranty claims. Raytheon Compl. ¶¶ 23 and 27. While all of these materials are part of the "well-pleaded complaint" for removal purposes, Raytheon chose not to attach any of these materials and omitted any reference to the federal regulations cited in its own contracts.

26.    Further, the analysis of federal question jurisdiction begins with a "well-pleaded complaint." *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1120 (9th Cir. 2011), citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). "However, the well-pleaded complaint rule has a necessary corollary — the artful pleading doctrine. Under the artful pleading rule a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *JustMed, Inc. v. Byce*, 600 F.3d 1118, 1124 (9th Cir. 2010) (citations and internal quotations omitted). The artful pleading doctrine allows courts to delve beyond the face of the state court complaint and find federal question jurisdiction by re-characterizing a plaintiff's state-law claim as a federal claim. *Lippit v. Raymond James Fin. Services, Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (citations omitted). The District Court can consider not only the well-pleaded factual allegations of the complaint itself, but also the documents cited in the plaintiff's initial pleading. *See, e.g., Smallwood*, *supra*

(state law claims based on intrastate storage contract preempted by federal law and properly removed); *Hall v. North American Van Lines, Inc.*, 476 F.3d 683, 686-689 (9th Cir. 2007) (same).   Only one claim in the complaint must implicate federal law to make removal appropriate.  *Smallwood*, *supra* (citing *Hall*, *supra*).

27.     Several federal Circuit Courts of Appeal have held that courts considering whether subject matter jurisdiction exists "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."   *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) ("When a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" (internal quotation omitted)).   In the context of Rule 12(b)(6) motions, the Ninth Circuit has ruled that "[a] district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"   *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998), *superseded by statute on other grounds as stated in Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012). Similarly, the subcontract documents and correspondence are specifically referenced in Raytheon's Complaint and integral to Raytheon's claims of breach of contract and breach of warranty.  *See* Ex. 3, Affidavit of Matthew Lent ("Lent Aff."), Exs. A-F.  Accordingly,

it is appropriate for this Court to consider the attached documents in weighing subject matter jurisdiction.

28.     Together, Raytheon's Complaint and the documents cited therein demonstrate that Raytheon's right to relief depends on resolution of substantial questions of federal law, including U.S. Military Specifications and Federal Acquisition Regulation clauses promulgated by the U.S. Government and incorporated by reference into each of the subcontracts between Raytheon and ATK.

29.     Under Arizona law, a claim for breach of contract requires that a plaintiff establish "the existence of the contract, its breach and the resulting damages."[2]  *Thomas v. Montelucia Villas, LLC*, Case No. CV-12-0156-PR (Ariz. June 14, 2013) (*en banc*) (citations omitted); *see also Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 111 (Ariz. App. 2004) (same).   Raytheon's alleges that ATK's breaches of contract included, *inter alia*, "ATK's repudiation of its IWR contractual obligations."   Raytheon Compl. ¶ 24.  In support of its repudiation argument, Raytheon alleges that "[o]n May 9, 2013, ATK notified Raytheon by letter that it considered the IWR Contracts to have been effectively terminated and that ATK was no longer contractually obligated to deliver the

---

[2] ATK does not concede that Arizona law governs this dispute.  Indeed, Raytheon deleted contract language calling for state law in at least four of the five subcontracts at issue.  *See* Ex. 3, Lent Aff., Exs. A-B, D-E, Attach. A, Sec. 7 (deleting a provision from Raytheon's standard terms and conditions (TC-001 (10/03)) stating "[i]rrespective of the place of performance, this Purchase Order will be construed and interpreted according to the laws of the State from which the Purchase Order is issued….").  ATK merely cites Arizona law to demonstrate that, to the extent that Raytheon's claims arise under the law of Arizona or another state, Raytheon's right to relief nonetheless depends on resolution of substantial questions of federal law.

974 rocket motors remaining to be delivered to Raytheon under those Contracts." *Id.* at ¶ 17.

30.     Unlike an ordinary breach of contract case, however, the subcontracts at issue in Raytheon's complaint expressly incorporate a well-developed body of federal law and regulations governing federal government contracts and subcontracts.

31.     Accordingly, to prove repudiation, Raytheon must show that it had not "effectively terminated" the subcontracts and ATK had a continuing obligation to perform.   This, in turn, requires application of federal law, including Federal Acquisition Regulation ("FAR") 52.249-2, Termination for Convenience and FAR 52.249-8, Default. *See* 48 C.F.R §§ 52.249-2 and 52.249-8.   These FAR clauses were promulgated by the U.S. government and incorporated by reference into each of the subcontracts between Raytheon and ATK.   A further issue will be whether Raytheon waived its right to terminate the subcontracts for default under the federal contract law doctrine of waiver of delivery date.

32.     Raytheon conceded the applicability of FAR 52.249-8, Default, in its Complaint, stating that "[o]n July 30, 2013, Raytheon **terminated for default** the rocket motor portions of the Lot 23 and 24 IWR Contracts as a result of…ATK's repudiation of its contractual obligations under the rocket motor portions of those Contracts."  Raytheon Compl. ¶ 20 (emphasis added); *see also* Ex. 3, Lent Aff., Ex. F at 1 (letter dated July 30, 2013 from Raytheon to ATK referenced in Raytheon Compl. ¶ 20, stating two of the

1   rocket motor subcontracts were "terminated for default, effective immediately…as a result
2   of ATK's repudiation of its obligations…").

3       33.     Additionally, on July 30, 2013, Raytheon also asserted a claim against ATK
4
5   under each of the rocket motor subcontracts, stating that its letter constituted "the written
6   final decision of the contracting officer of Raytheon Missile Systems."  *See* Ex. 3, Lent
7   Aff., Ex. F. at 2.  Raytheon's language is consistent with FAR 52.233-1, Disputes, which
8   is incorporated by reference into four of the five subcontracts.  *See* Ex. 3, Lent. Aff., Exs.
9   A-B, D-E, Attach. A, Sec. 7.
10
11      34.     Under Arizona law, a claim for breach of express warranty is "treated like
12  any other contract and interpreted according to general contract principles."[3]  *Chaurasia v.*
13  *General Motors Corp.*, 212 Ariz. 18, 22, 126 P.3d 165, 169 (Ariz. 2006).

14      35.     Raytheon alleges that: (1) "ATK expressly warranted that the rocket
15
16  motors…would be free from defects in work, materials, and design, and be in compliance
17  with all the requirements of the Contracts, including specifications"; (2) "ATK has
18  delivered at least 442 rocket motors…that are defective in workmanship, materials or
19  design and do not comply with Contract specifications"; and (3) "ATK has refused to
20  repair or replace at least 442 defective rocket motors…."  Raytheon Compl. ¶¶ 21-22, 28.
21
22      36.     The rocket motor subcontracts reference a package of technical drawings
23  that incorporate various government requirements via U.S. Military Specifications that
24  have been developed by the U.S. Government over many years to meet its unique
25

26  _____
    [3] *See supra*, note 2.
27

28

12

1    requirements.  ATK Compl. ¶ 20.  Further, upon information and belief, all rocket motor

2    specifications set forth in the subcontracts originated from identical rocket motor

3    specifications set forth in Raytheon's prime contracts with the U.S. Air Force.

4           37.    The U.S. Government has a substantial and unique interest in the

5

6    determination of whether rocket motors intended for use in air-to-air missiles comply with

7    U.S. Military Specifications and other specifications set forth in the prime contracts and

8    subcontracts.

9           38.    Because this Court has federal question jurisdiction, the Court also has

10

11   supplemental jurisdiction over any related state law claims, counterclaims or defenses

12   under 28 U.S.C. § 1367(a) ("the district courts have original jurisdiction, the district

13   courts shall have supplemental jurisdiction over all other claims that are so related to

14   claims in the action within such original jurisdiction. . . .")

15                                            **Conclusion**

16

17          For the reasons addressed above, the U.S. District Court for the District of Arizona

18   has jurisdiction in this matter.

19          DATED this 29th day of August, 2013.

20                                      RUSSELL B. STOWERS, PLLC

21

22                                      By:  s/ Russell B. Stowers
                                        Russell B. Stowers
23                                      La Paloma Corporate Center
                                        3573 East Sunrise Drive, Suite 215
24                                      Tucson, AZ 85718
                                        Counsel for Defendant
25                                      Alliant Techsystems Inc.

26

27

28

Original filed via the Court's ECF system
and copies transmitted electronically
this 29th day of August, 2013 to:

Joshua S. Akbar
DENTONS US LLP
2398 E. Camelback Road
Suite 1100
Phoenix, AZ 85016
joshua.akbar@dentons.corn
Counsel for Plaintiff
Raytheon Company

Robert F. Scoular
Steven H. Frankel
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
robert.scoular@dentons.corn
steven.frankd@dentons.corn