**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RAYTHEON COMPANY, ) <br> ) <br> Plaintiff/Counter-Defendant, ) <br> ) <br> vs. ) <br> ) <br> ALLIANT TECHSYSTEMS, INC., ) <br> ) <br> Defendant/Counterclaimant. ) <br> ) | No. CIV 13-1048-TUC-CKJ <br><br> **ORDER** |

Pending before the Court is the Motion to Remand (Doc. 11) filed by Plaintiff/ Counter- Defendant Raytheon Company ("Raytheon"). A response has been filed by Defendant/Counterclaimant Alliant Techsystems, Inc. ("Alliant") and a reply has been filed by Raytheon. Although requested by Raytheon, the Court declines to set this matter for oral argument. LRCiv 7.2(f).

*Procedural History*

On July 30, 2013, Raytheon filed a Complaint in the Pima County Superior Court alleging claims of breach of contract and breach of express warranty against Alliant. Raytheon contemporaneously filed a Motion to Designate as Complex Case. Raytheon asserts the case would involve a large documentary record, substantial fact and expert deposition testimony, complicated legal and factual issues, and damages in excess of $110 million.

On July 31, 2013, Alliant filed a Complaint in the District Court for the Eastern

1  District of Virginia ("the Virginia Court"), alleging claims for declaratory relief and breaches
2  of contract. On September 17, 2013, that court issued an order finding the court lacked
3  subject matter jurisdiction, finding dismissal appropriate because a first-filed Arizona
4  proceeding had been initiated by Raytheon, and dismissing the matter. *See* E.D.Va. Case No.
5  1:13-cv-00919-LO-IDD, Doc. 20.

6  On August 29, 2013, Alliant filed an Answer and removed the action to this Court.
7  *See* Docs. 1 and 4. On September 19, 2013, Alliant filed a First Amended Answer and
8  Counterclaims. On October 9, 2013, Alliant filed a redlined copy of its First Amended
9  Answer and Counterclaims.

10  On September 27, 2013, Raytheon filed the pending Motion to Remand (Doc. 11).
11  A response (Doc. 15) and a reply (Doc. 16) have been filed.

13  *Removal/Remand*

14  State court actions that originally could have been filed in federal court may be
15  removed to federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386,
16  392 (1987). The removal statutes are to be strictly construed. *Shamrock Oil & Gas Corp.*
17  *v. Sheets*, 313 U.S. 100, 108-09 (1941). Federal courts will decline jurisdiction if there is any
18  doubt as to the propriety of removal. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).
19  If at any time before final judgment it appears that the district court lacks subject matter
20  jurisdiction over a case that has been removed to federal court, the case must be remanded.
21  *See* 28 U.S.C. § 1447(c). Moreover, a district court is under a duty to examine, on its own
22  motion, whether a removed case should be remanded to state court; the court need not wait
23  for a motion to remand. *In re MacNeil Bros. Co.*, 259 F.2d 386, 388 (1st Cir. 1958), *see also*
24  *Kattalla Co. v. Rones*, 186 F. 30 (9th Cir. 1911) (district court may, on its own motion,
25  decline to exercise jurisdiction over removed action).

1  *Federal Question – Res Judicata*

2        Raytheon asserts that the Virginia Court's determination that there was no federal
3  subject matter jurisdiction over the parties' dispute is *res judicata* and forecloses Alliant's
4  attempt to establish federal removal jurisdiction in this case. *Comer v.Murphy Oil USA, Inc.*,
5  718 F.3d 460, 469 (5th Cir. 2013) (citations omitted) ("Although a jurisdictional ruling is
6  technically not an adjudication on the merits, '[i]t has long been the rule that principles of
7  res judicata apply to jurisdictional determinations – both subject matter and personal,'" and
8  a litigant "cannot command a second consideration of the same jurisdictional claims.").
9  Alliant points out, however, that the Virginia Court did not determine there was no federal
10 subject matter jurisdiction over the parties' dispute, but that there was no subject matter
11 jurisdiction over Alliant's complaint. Further, Alliant asserts neither the claims nor the issues
12 are identical and no preclusive effect should be given to the decision of the Virginia Court.

13       The doctrine of *res judicata* includes two types of preclusion:  claim preclusion and
14 issue preclusion.  In accordance with Ninth Circuit case law, this Court will use the terms
15 "claim preclusion" and "issue preclusion", rather than *res judicata* and collateral estoppel.
16 *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 n. 2 (9th Cir. 1988).  Claim preclusion
17 "prohibits ' the parties or their privies from relitigating issues that were or could have been
18 raised' in an action resulting in '[a] final judgment on the merits[.]"  *Herb Reed Enterprises,*
19 *LLC v. Florida*, — F.3d — , 2013 WL 6224288 (9th Cir. 2013) (citation omitted); *see also*
20 *Minjares v. State*, 223 Ariz. 54, 219 P.3d 264 (App. 2009) ("Under the doctrine of claim
21 preclusion, a final judgment binds the parties and their privies 'when a former judgment on
22 the merits was rendered by a court of competent jurisdiction and the matter now in issue
23 between the same parties or their privities was, or *might have been determined in the former*
24 *action*.'"  *Minjares v. State*, 223 Ariz. 54, 58, 219 P.3d 264, 268 (App. 2009) (citation
25 omitted, emphasis in original).  A judgment on the merits was not rendered by the Virginia
26 Court; the Court finds, therefore, that claim preclusion does not apply in this case.

27       Issue preclusion bars the "relitigation of all issues that were litigated in a prior

28 - 3 -

1  proceeding, even if the second proceeding is an action on a claim different from the one
2  asserted in the first action." *Shaw v. California Dept. of Alcoholic Bev. Control*, 788 F.2d
3  600, 605 (9th Cir. 1986). It requires "(1) the issue at stake was identical in both proceedings;
4  (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full
5  and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the
6  merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012). In this case, the Virginia
7  Court stated that, "even if there were a basis for federal question jurisdiction over [Alliant's]
8  complaint, this Court would dismiss this action in favor of the first-filed Arizona proceedings
9  initiated by Raytheon. Those now-federal proceedings commenced first, and under these
10 circumstances 'the first or prior action is permitted to proceed to the exclusion of another
11 subsequently filed.'" E.D.Va. Case No. 1:13-cv-00919-LO-IDD, Doc. 20, p. 3 (citation
12 omitted). In other words, because the issue was not necessary to the Virginia Court's
13 dismissal of the Virginia action, issue preclusion is not appropriate in this matter.

*Federal Question – Substantial Federal Interests*

The applicable statue allows removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction over all claims "arising under the Constitution, laws, or treaties of the United States." Raytheon asserts this case, which involves claims for breaches of contract and warranty involving two private (non-diverse) parties and, according to Raytheon, arises under state law, could not have been filed in federal court. Alliant asserts, however, that while Raytheon's claims are facially predicated on state law, this case nonetheless arises under federal law because Raytheon's right to relief implication substantial federal interests.

Federal question jurisdiction exists only over those cases in which a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."

- 4 -

*Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012), *quoting Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006). Whether a suit "arises under" federal law is determined by the well-pleaded complaint rule, which provides that federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because a defense is not "part of a plaintiff's properly pleaded statement of his or her claim[,]" a defense that raises a federal question is inadequate to confer federal jurisdiction." *Provincial Gov't of Marinduque v. Placer*, 582 F.3d 1083, 1091 (9th Cir. 2009). Therefore, under the well-pleaded complaint rule, "the plaintiff is the master of his complaint and may avoid federal jurisdiction by relying exclusively on state law." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quotations and citation omitted).

Cases arise under federal law in two ways. "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, — U.S. — , 133 S.Ct. 1059 (2013). Such claims "account[ ] for the vast bulk of suits that arise under federal law." *Id*. In a much narrower category are state law claims that "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Empire*, 547 U.S. at 699 (explaining that such claims are in a "special and small category" of federal "arising under" jurisdiction). Claims in this category fall within a limited exception to the well-pleaded complaint rule, which is grounded in "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id*. To fall within this so-called "substantial federal question" exception, a state law claim must present a federal issue which is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S.Ct. at 1064 (*citing Grable*, 545 U.S. at 314).

1   The issue presented by Raytheon's Motion to Remand is whether Raytheon's state law
2  claims raise an issue of federal law that is "substantial" enough to warrant the exercise of
3  federal question jurisdiction. As Alliant removed the case from state court, Alliant bears the
4  burden of demonstrating that the exercise of federal question jurisdiction is proper. *Hunter*,
5  582 F.3d at 1042. Not only is there a "strong presumption" against removal, *id*., but any
6  doubts about the propriety of a removal must be resolved in favor of remand.
7  *Moore–Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

8   Relying on *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d
9  640 (9th Cir.1961) and *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir.1996),
10 Alliant argues that the federal government has a strong interest in having disputes relating
11 to such contracts adjudicated uniformly in federal court. At first glance, *American Pipe* and
12 *New SD* appear to support Alliant's assertion that this case presents a substantial federal
13 question. In deciding to apply federal law rather than California law to claims arising from
14 an alleged breach of a subcontract for the manufacture of missile containers for the federal
15 government in *American Pipe*, the court noted that the plaintiff's requested remedy – an
16 "equitable adjustment" in the subcontract price – would result in increased national security
17 costs to the federal government. 292 F.2d at 644. The court reasoned that, in light of
18 Congress's expressed desire to reduce national security costs, the federal government had a
19 substantial interest in having such cases adjudicated "uniform[ly] throughout the country."
20 *Id*. at 643. The court concluded that "the construction of contracts, let under prime contracts
21 connected with the national security, should be regulated by a uniform federal law." *Id*.

22  Similarly, in *New SD*, the plaintiff's claim was for breach of a subcontract let under
23 a prime government contract which implicated national security. 79 F.3d at 955. After
24 reviewing its decision in *American Pipe*, the court concluded that the case could not be
25 "meaningfully distinguish[ed]." *Id*. The court stated:

26  [O]n government contract matters having to do with national security, state law is totally displaced by federal common law. Where the federal interest requires that "the rule must be uniform throughout the country," as we said was the case in *American*

- 6 -

> *Pipe*, then the entire body of state law applicable to the area conflicts and is replaced by federal rules." When federal law applies, as *American Pipe* holds that it does to this type of contract, it follows that the question arises under federal law, and federal question jurisdiction exists.

*New SD*, 79 F.3d at 955 (internal quotations and citations omitted).

The Court recognizes that *American Pipe* and *New SD* were decided before the Supreme Court's decisions in *Grable* and *Empire*, which clarified the proper scope of the substantial federal question doctrine. In *Grable*, the Court emphasized that the mere presence of a federal issue is insufficient "to open the 'arising under' door" and explained the federal issue must be "a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." 545 U.S. at 313. Indeed, a court must consider the potential for disruption of the balance of power between state and federal government:

> Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.

*Id*. at 314. The Court stated that "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*.

In *Empire*, a health insurance carrier for federal employees filed suit in federal court, seeking reimbursement of health insurance benefits paid on behalf of its insured after the insured's estate negotiated a substantial settlement in a state-law tort action. The Supreme Court rejected the insurer's argument that federal question jurisdiction existed under *Grable* because federal law provided a necessary element of its claim for relief. *Empire*, 547 U.S. at 699. The Court determined that, while *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute[,]" the issues in *Empire* did not. *Empire*, 547 U.S. at 700. Additionally, the Court explained that the "substantial" federal question at

- 7 -

issue in *Grable* "was both dispositive of the case and would be controlling in numerous other cases" – a description which did not apply to the "bottom-line practical issue" of whether the insurer was entitled to a share of the settlement proceeds. *Id*. Finally, the Court reasoned that while *Grable* presented "a nearly pure issue of law," the case before it was "fact-bound and situation-specific." *Id*. at 700–01 (citation omitted). The Court concluded that the insurer's claim for reimbursement could not be "squeezed into the slim category *Grable* exemplifies." *Id*. at 701.

The Supreme Court's clarification leads to a conclusion that the premise of *American Pipe* and *New SD* that private disputes relating to a government contract should be uniformly adjudicated in federal court when "the cost of national security stands to be increased in the process[,]" *New SD*, 79 F.3d at 955 (*citing American Pipe*, 292 F.2d at 644), is no longer sound. Indeed, the Supreme Court stated that "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Grable*, 545 U.S. at 314. Neither *American Pipe* nor *New SD* addresses the potential for disruption of the balance of power between state and federal government. Other courts have recognized that the reasoning in *New SD*, without an assessment of any disruptive effect, could support the exercise of federal jurisdiction in virtually any case involving a government contract. *See Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123, 128 (2d Cir.1999) ("[T]he reasoning behind *New SD* is, in our opinion, flawed. While there is no question that contracts relating directly to government liability for procurement decisions are governed by federal common law, the issue gets muddier as the contract gets further removed from the government."); *Babcock Services, Inc. v. CH2M Hill Plateau Remediation Company, Inc.*, No. 13-CV-5093-TOR, 2013 WL 5824465 (E.D.Wash. 2013).

Furthermore, it does not appear that, under *Empire*, the mere potential for increased costs to the federal government automatically warrants uniform adjudication of private contract disputes. Rather, the federal contractor's attempt in *Empire* to recover funds paid

- 8 -

pursuant to a federal contract did not trigger the federal government's interest in uniform adjudication. Thus, it appears the need for uniformity cannot support the exercise of federal question jurisdiction over disputes in which the government's financial interest is more attenuated.

The Court concludes *American Pipe* and *New SD*, in light of *Grable* and *Empire*, do not support the exercise of federal question jurisdiction. Rather, this Court considers the framework laid out by the Supreme Court in *Grable*. Although the issues in this case involve a federal agency, federal regulations, and federal specifications, the issues are centered on whether (1) Alliant failed to deliver a product in compliance with the terms of a contract between the parties and (2) Alliant failed to repair or replace defective product. Although Alliant asserts, *inter alia*, that Acquisition Regulation clauses bar relief, this defense that raises a federal question is inadequate to confer federal jurisdiction." *Placer*, 582 F.3d at 1091. Indeed, even if an interpretation of federal regulations or specification is required, that does not mean "the development of a uniform body" of federal law would be undermined or that such an interpretation would control in numerous other cases. *Gunn*, 133 S.Ct. at 1067; *see also Patrickson v. Dole Food Co.*, 251 F.3d 795 (9th Cir. 2001), *aff'd in part, dism. in part*, 538 U.S. 468 (2003) . Further, the "bottom-line" issue in this case is whether Alliant breached contracts or warranties – i.e., it is not a "substantial" federal question that will be dispositive. *Empire*, 547 U.S. at 700. Lastly, like *Empire*, this case does not appear to involve "a nearly pure issue of law[;]" rather, this case appears to be "fact-bound and situation-specific." *Id*. at 700–01 (citation omitted).

The Court concludes a "substantial" federal question is not necessarily raised in this case. The Court finds this matter is appropriately remanded to state court.

*Attorneys' Fees and Costs*

Raytheon has requested an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). That statute provides, in relevant part, that "[a]n order remanding [a] case may

- 9 -

require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  The Supreme Court has "determined that district courts should award attorney's fees and costs under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Otay Land Co. v. United Enterprises Ltd.*, 672 F.3d 1152, 1157 (9th Cir. 2012), *quoting Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141.  The Court finds Alliant had an objectively reasonable basis for removing this case under the Ninth Circuit's decisions in *American Pipe* and *New SD*.  The Court will deny Raytheon's request for attorneys' fees and costs.

Accordingly IT IS ORDERED:

1. The Motion to Remand (Doc. 11) is GRANTED IN PART AND DENIED IN PART.

2. This matter is REMANDED to the Pima County Superior Court (Cause # C20134194).

3. The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Pima County Superior Court.

4. Raytheon's request for attorneys' fees and costs is DENIED.

5. The Clerk of Court shall then close its file in this matter.

DATED this 2nd day of January, 2014.

_____
Cindy K. Jorgenson
United States District Judge